**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

| | |
|---|---|
| JO ANN LOFTON, Individually and For Others Similarly Situated<br><br>v.<br><br>UTICA AMBULANCE SERVICE, INC. d/b/a KUNKEL AMBULANCE SERVICE | Case No. 6:25-cv-1007 (MAD/MJK)<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br><br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jo Ann Lofton brings this class and collective action to recover unpaid wages and other damages owed by Utica Ambulance Service, Inc. d/b/a Kunkel Ambulance Service under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).

2. Lofton worked for Utica as an Emergency Medical Technician (EMT) in New York.

3. Utica paid Lofton by the hour.

4. Lofton regularly worked 10 to 12 hours a day, 4 to 5 days a week.

5. But Utica did not pay Lofton at least 1.5 times her regular rate of pay—based on all remuneration—for all hours worked after 40 in a week.

6. Instead, Utica paid Lofton non-discretionary bonuses (*e.g.*, sign on bonuses) that it excluded from the "regular rate" for overtime purposes (the "bonus pay scheme").

7. Utica's bonus pay scheme violates the FLSA and NYLL because overtime is not paid at 1.5 times its employees' regular rates of pay.

8. Further, despite NYLL § 195(3), Utica does not provide accurate, complete, and/or compliant pay statements.

9. Nor does Utica provide the accurate and/or compliant written notices required by NYLL § 195(1).

10. Utica's failure to provide accurate and/or compliant itemized wage statements and/or written notices causes its employees (including Lofton) to suffer concrete and cognizable injuries, including obscuring the wages they are lawfully owed and preventing them from determining the wages they are lawfully owed, preventing them from determining improper deductions from their wages, and by delaying their ability to remedy Utica's underpayment of their wages.

11. Additionally, Utica employs numerous "manual workers" (including Lofton), as defined by NYLL § 191.

12. Utica fails to pay its manual workers their wages within seven calendar days after the end of the week in which they earned such wages, as required by NYLL § 191.

13. Instead, Utica pays them bi-weekly.

14. Utica thus pays earned wages to its manual workers untimely.

15. Manual workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

16. Accordingly, Utica's failure to timely pay earned wages owed to its manual workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

## JURISDICTION & VENUE

17. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

18. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

19. As a New York corporation, Utica is subject to general personal jurisdiction.

20. Venue is proper because Utica maintains its principal place of business in Utica, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

21. Lofton was an EMT for Utica from December 2016 to October 2022 (approximately).

22. Throughout her employment, Utica paid Lofton under its bonus pay scheme.

23. And throughout her employment, Utica paid Lofton every other week.

24. Lofton's written consent is attached as **Exhibit 1**.

25. Lofton brings this class and collective action on behalf of herself and other similarly situated Utica employees paid under its bonus pay scheme and/or biweekly pay scheme.

26. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Utica employees who were paid under its bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

27. Lofton also seeks to represent a New York class pursuant to FED. R. CIV. P. 23.

28. The putative New York class of similarly situated employees subject to Utica's bonus pay scheme is defined as:

> **All hourly Utica employees in New York who Utica paid under its bonus pay scheme during the last 6 years and 228 days[1] until final resolution of the Action (the "New York Class Members").**

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

29. Lofton also seeks to represent a class of manual workers under NYLL § 191 pursuant to FED. R. CIV. P. 23.

30. The putative class of similarly situated manual workers is defined as:

> **All hourly EMTs and paramedics who Utica paid later than seven calendar days after the end of the week in which their wages were earned at any time during the last 6 years and 228 days through final resolution of the Action, (the "Manual Workers").**

31. The FLSA Collective Members, New York Class Members, and Manual Workers Class are collectively referred to as the "Hourly Employees."

32. Utica is a New York corporation headquartered in Utica, New York.

33. Utica may be served through its registered agent: **C T Corporation System, 28 Liberty St., New York, NY 10005**.

## FLSA COVERAGE

34. At all relevant times, Utica was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

35. At all relevant times, Utica was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

36. At all relevant times, Utica was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

37. At all relevant times, Utica had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38. At all relevant times, Lofton and the other Hourly Employees were Utica's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

39. At all relevant times, Lofton and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

40. Utica is an emergency medical transport company "operates from a central facility in Utica . . . serve[ing] Oneida and Herkimer counties . . . [through] expert teams of EMTs, paramedics, dispatchers, and support staff."[2]

41. To meet its business objectives, Utica employs workers, including Lofton and the other Hourly Employees, to provide medical services and transportation to its patients.

42. From approximately December 2016 through October 2022, Utica employed Lofton as an EMT in and around Utica, New York.

43. Lofton's job duties included responding to emergency calls, evaluating patients' illness or injury, providing emergency medical care, transporting and moving patients, including by setting up and moving patients on and off gurneys, transporting patients to appropriate medical facilities, charting, and training new EMTs.

44. Lofton typically worked approximately 10 to 12 hours a day and 4 to 5 days a week "on the clock" (40 to 60 hours a workweek).

45. Utica paid Lofton approximately $19.32 an hour.

46. The other Hourly Employees work similar schedules "on the clock."

47. Utica required Lofton and the other Hourly Employees to report their "on the clock" hours via Utica's designated timekeeping system.

---

[2] https://priorityambulance.com/brands/kunkel-ambulance/ (last visited July 24, 2025).

48. Utica thus knows Lofton and the other Hourly Employees regularly work 40 to 60 hours a week (or more) on the clock.

49. But Utica does not pay its Hourly Employees overtime at the required premium rates.

50. Instead, Utica pays its Hourly Employees under its bonus pay scheme.

51. Specifically, Utica agrees to pay and subsequently pays Lofton and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, training bonuses, and retention bonuses, based on Hourly Employees meeting Utica's criteria.

52. Utica excludes these bonuses from its Hourly Employees' regular rates of pay for overtime purposes.

53. Thus, under its bonus pay scheme, Utica does not pay Lofton and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work after 40 in a workweek, in violation of the FLSA and NYLL.

54. And this results in Utica inaccurately recording Lofton's and the other Hourly Employees' overtime rates at rates lower than 1.5 times their regular rates of pay, based on all remuneration.

55. Making matters worse, Utica did not provide Lofton with accurate and compliant written notice of all information required by NYLL § 195(1) at the time of her hiring.

56. Utica's wage notice gave an inaccurate regular rate of pay and overtime rate of pay.

57. Utica provides similarly noncompliant wage notices to the New York Class Members.

58. Lofton and the other New York Class Members were injured due to Utica's failure to provide the wage notices required by NYLL § 195(1).

59. Utica also failed to provide Lofton accurate, itemized wage statements as required by NYLL § 195(3).

60. Specifically, Utica's itemized wage statements do not show Lofton's overtime rate of pay as at least 1.5 times her regular rate of pay.

61. Utica provides noncompliant wage statements to the other New York Class Members.

62. Each pay period, Utica provides the New York Class Members with wages statements showing inaccurate overtime rates.

63. Utica's failure to provide accurate and compliant wage notices, as required under NYLL § 195(1), caused Lofton and the New York Class Members to suffer informational harm and prevented them from knowing whether, and to what extent, Utica underpaid them.

64. Utica's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Lofton and the other New York Class Members of the ability to ensure Utica made proper payroll tax deductions on their behalf.

65. Utica's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Lofton and the other New York Class Members of the ability to ensure Utica made proper deductions from their pay in the correct amounts.

66. Utica's failure to provide wage statements as required by NYLL § 195(3) concretely injured Lofton and the other New York Class Members.

67. Utica's failure prevented Lofton and the New York Class Members from knowing whether, and to what extent, Utica underpaid them.

68. Utica's failure to provide accurate and compliant itemized wage statements prevented the New York Class Members from ensuring Utica made required payroll tax deductions.

69. It also deprived Lofton and the other New York Class Members of the ability to ensure Utica properly made other deductions from their pay in the correct amounts.

70. Utica's willful violations of NYLL § 195(1) and (3) prevented Lofton and the other New York Class Members from taking action to correct Utica's NYLL violations (*e.g.*, underpaying

overtime wages) at an earlier time, resulting in numerous workweeks for which the New York Class Members were deprived of the time value of their earned wages and numerous workweeks for which they are now time-barred from recovering their earned wages.

71. Utica's wage notices and itemized wage statements told the New York Class Members they have been paid all the wages they owed when, in fact, Utica owed them additional overtime wages.

72. Utica's issuance of false, deceptive, and/or misleading wage notices and itemized wage statements concretely harmed Lofton and the other New York Class Members by falsely informing them they had been paid in full for their labor when, in fact, they were owed additional overtime wages.

73. Utica hid its NYLL and FLSA violations, impeding the New York Class Members from obtaining full payment of wages owed to them in a timely fashion.

74. Throughout their employment, the New York Class Members relied—to their detriment—on Utica's representations regarding full payment of wages.

75. Had Utica provided accurate and legally compliant wage notices and itemized wage statements, Lofton and/or other New York Class Members would have undertaken self-advocacy and/or brought an earlier action to recover such unpaid wages.

76. Indeed, after learning Utica underpaid him, Lofton brought this action, albeit on a timeframe slowed by Utica's misrepresentations.

77. But for Utica's false, deceptive, and/or misleading wage notices and itemized wage statements, Lofton and the New York Class Members would have avoided the lost time-value of their unpaid wages by recovering sooner.

78. Put simply, had Utica complied with NYLL § 195(1) and (3), the New York Class Members would have known Utica owed them overtime and could have pursued payment.

79. Lofton spent more than 25% of her work time performing physical tasks, including operating medical equipment, treating and moving patients, operating a gurney, as well as standing or otherwise "being on her feet" for extended periods of time.

80. Despite regularly spending more than 25% of her shifts performing physical tasks, Utica paid Lofton only every other week.

81. Thus, Utica failed to timely pay Lofton her wages earned not later than seven days after she earned such wages, as required by NYLL § 191(1)(a), for every other week from December 2016 through October 2022.

82. As a result of Utica's untimely wage payments, Utica has underpaid Lofton every other week across this entire period.

83. Utica's underpayments deny Lofton the time-value of her earned wages. *See Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 345-46 (S.D.N.Y. 2024) (holding an employee's "lost time value of his wages" is an injury in fact).

84. For example, Lofton was unable to invest, save, or purchase utilizing the wages she earned during the first seven days of each bi-weekly pay period.

85. Utica subjects the other Manual Workers to the same untimely pay it imposed on Lofton.

86. The other Manual Workers perform the same or similar physical job duties as Lofton.

87. Despite regularly spending more than 25% of their worktime performing these physical tasks, Utica failed to timely pay the other Manual Workers their earned wages each week.

88. Instead, Utica pays the other Manual Workers bi-weekly.

89. As a result of its untimely wage payments, Utica underpays the other Manual Workers for the first seven days of each bi-weekly pay period.

90. And Utica's underpayments similarly deny the other Manual Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

91. Thus, like Lofton, Utica paid the other Manual Workers on an untimely basis, in willful violation of NYLL § 191.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

92. Lofton brings her claims as a class and collective action on behalf of herself and the other Hourly Employees.

93. Utica's bonus pay scheme and notice violations victimized the Lofton and the other Hourly Employees.

94. Lofton worked with other Hourly Employees who indicated they were subject to Utica's bonus pay scheme, bi-weekly pay, and suffered similar notice violations.

95. Based on her experience with Utica, Lofton is aware Utica's bonus pay scheme, bi-weekly pay, and notice violations were imposed on other Hourly Employees.

96. The Hourly Employees are similarly situated in the most relevant respects.

97. Even if their manual job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to timely overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

98. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

99. Rather, Utica's bonus pay scheme, bi-weekly pay, and notice violations render Lofton and the other Hourly Employees similarly situated for the purpose of determining their right to timely wages and overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

100. Utica's records show it employed dozens of employees who qualify as New York Class Members.

101. Utica's records show it employed dozens of workers who qualify as Manual Employees.

102. Utica's records show the number of hours the Hourly Employees recorded working "on the clock" each week.

103. Utica's records also show the non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes.

104. Utica's records show it paid Lofton and the other Manual Workers every other week.

105. The back wages owed to Lofton and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

106. The timeliness of the payment of wages to Lofton and the other Hourly Employees can likewise be determined using the same formula applied to the same records.

107. Even if the issue were somewhat individual in character, damages can be calculated by reference to Utica's records, and there is no detraction from the common nucleus of liability facts.

108. Therefore, the issue of damages does not preclude class or collective treatment.

109. Lofton's experiences are typical of the experiences of the other Hourly Employees.

110. Lofton has no interests contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

111. All the Hourly Employees share a common interest in obtaining the wages and damages owed under federal and New York law.

112. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

113. Lofton and her counsel will fairly and adequately protect the interests of the Hourly Employees.

114. Lofton retained counsel with significant experience in handling complex class and collective action litigation.

115. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Utica will reap the unjust benefits of violating the FLSA and NYLL.

116. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

117. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Utica.

118. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

119. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

120. Among the common questions of law and fact are:

a. Did Utica pay the Hourly Employees non-discretionary bonuses;

b. Did Utica failed to exclude non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c. Did Utica pay the Hourly Employees overtime at the required premium rates (i.e., based on all remuneration);

d. Was Utica's decision not to pay the Hourly Employees overtime wages at the required rate (based on all remuneration) for all overtime hours worked made in good faith;

e. Whether the Manual Workers are manual workers under NYLL § 191;

f. Did Utica pay the Manual Workers their earned wages on a bi-weekly basis;

g. Did Utica pay the Manual Workers their lawfully earned wages on an untimely basis in violation of the NYLL;

h. Did Utica provide wage notices at the beginning of New York Class Members' employment that accurately informed employees of all information required by NYLL § 195(1);

i. Did Utica provide the New York Class Members with accurate, itemized wage statements including the information required by NYLL § 195(3); and

j. Whether Utica's FLSA and NYLL violations were willful?

121. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

122. The Hourly Employees are known to Utica, are readily identifiable, and can be located through Utica's business and personnel records.

**UTICA'S VIOLATIONS WERE WILLFUL**

123. Utica knew it employed Lofton and the other Hourly Employees.

124. Utica knew it was subject to the FLSA's and NYLL's overtime provisions.

125. Utica knew Lofton and each Hourly Employee worked more than 40 hours in at least one workweek during the last 6 years and 228 days because these employees were required to report their "on the clock" hours via Utica's timekeeping system.

126. Utica knew it was subject to the NYLL's timely pay provisions and notice provisions.

127. Utica knew the NYLL required it to pay manual workers, such as Lofton and the other Manual Workers, their earned wages within seven calendar days after the end of the week in which they earned such wages.

128. Utica knew the NYLL required it to provide itemized notices regarding the timing, frequency, calculation, etc. of earned wages to the New York Class Members.

129. Utica knew Lofton and the other Hourly Employees were non-exempt employees entitled to overtime pay.

130. Utica knew it paid Lofton and the other Hourly Employees non-discretionary bonuses.

131. Utica knew it was required to include these non-discretionary bonuses in the Hourly Employees' regular rates of pay.

132. Utica knew these non-discretionary bonuses were not included in Lofton's and the other Hourly Employees' regular rates of pay for overtime purposes.

133. And Utica knew the FLSA and NYLL require it to pay Lofton and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

134. Utica's failure to pay Lofton and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

135. Utica knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and NYLL.

136. Utica knowingly, willfully, and/or in reckless disregard of the FLSA and NYLL carried out its unlawful bonus pay scheme, bi-weekly pay, and lack of required notice that deprived Lofton and the other Hourly Employees of timely wages, overtime wages of at least 1.5 times their regular

rates of pay, and lawfully required notice, which caused them injury, in violation of the FLSA and NYLL.

**COUNT I**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVE)**

137. Lofton brings her FLSA claims as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

138. Utica violated, and is violating, the FLSA by employing non-exempt employees such as Lofton and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

139. Utica's unlawful conduct harmed Lofton and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

140. Accordingly, Utica owes Lofton and the other FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

141. Because Utica knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Utica owes Lofton and the other FLSA Collective Members these wages for at least the past 3 years.

142. Utica also owes the FLSA Collective Members an equal amount as liquidated damages.

143. Finally, Lofton and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL**
**(NEW YORK CLASS)**

144. Lofton brings her NYLL claims as a class action pursuant to FED. R. CIV. P. 23.

145. Utica's conduct violates the NYLL. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*

146. At all relevant times, Utica was subject to the NYLL because Utica was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

147. At all relevant times, Utica employed Lofton and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

148. The NYLL requires employers, like Utica, to pay non-exempt employees, including Lofton and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

149. Lofton and the other New York Class Members are entitled to overtime pay under the NYLL, based on all remuneration.

150. Utica violated, and is violating, the NYLL by employing the New York Class Members for workweeks longer than 40 hours without paying them overtime wages at rates at least 1.5 times their regular rates of pay—based on all remuneration— for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

151. Utica's unlawful conduct harmed Lofton and the other New York Class Members by depriving them of the premium overtime wages they are owed.

152. Accordingly, Utica owes Lofton and the other New York Class Members the difference between the rate actually paid and the required overtime rates, plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

153. Because Utica acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law, Utica is also liable to Lofton and the other New York Class Members for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

154. Finally, Lofton and the other New York Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

**COUNT III**
**FAILURE TO PAY TIMELY WAGES UNDER NYLL § 191**
**(MANUAL WORKER CLASS)**

155. Lofton brings her NYLL claims as a class action pursuant to FED. R. CIV. P. 23.

156. Utica's conduct violates the NYLL. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*

157. At all relevant times, Utica was subject to the NYLL because Utica was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

158. At all relevant times, Utica employed Lofton and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

159. Section 191 of the NYLL requires employers, like Utica, to pay manual workers, including Lofton and the other Manual Workers, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

160. NYLL § 191's timely payment of wages provisions and its supporting regulations apply to Utica and protect Lofton and the other Manual Workers.

161. Utica violated, and is violating, the NYLL by failing to pay Lofton and the other Manual Workers on a timely basis. *See* NYLL § 191(1)(a).

162. Utica's unlawful conduct harmed Lofton and the other Manual Workers by depriving them of their earned wages.

163. In violating the NYLL, Utica acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

164. Thus, Utica's NYLL violations with respect to Lofton and the other Manual Workers were "willful" within the meaning of NYLL § 198.

165. In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of this District held the NYLL's liquidated damages provisions are "designed to deter wage and hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

166. Accordingly, Lofton and the other Manual Workers are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## COUNT IV
## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
## (NEW YORK CLASS)

167. Lofton brings her NYLL wage statement claims as a class action pursuant to FED. R. CIV. P. 23.

168. Utica's conduct violates the NYLL. *See* NYLL §§ 190, *et seq*. and 650, *et seq*.

169. At all relevant times, Utica was subject to the NYLL because Utica was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

170. At all relevant times, Utica employed Lofton and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

171. Utica did not provide Lofton or the New York Class Members with accurate or compliant itemized wage statements as required under NYLL § 195(3).

172. With each payment of wages, Utica failed and continues to fail to provide Lofton and the New York Class Members with an accurate statement listing each of the following categories of information:

a. The dates of work covered by that payment of wages;

b. Name of employee;

c. Name of all employers;

d. Address and phone number of each employer;

e. Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

f. Gross wages;

g. Deductions;

h. Allowances, if any, claimed as part of the minimum wage;

i. Net wages;

j. The regular hourly rate or rates of pay;

k. The overtime rate or rates of pay;

l. The number of regular hours worked; and

m. The number of overtime hours worked.

173. Utica provided wage statements inaccurately underreporting the New York Class Members' earned overtime wages.

174. Utica issued wage statements to Lofton and the New York Class Members falsely informing them they had been paid in full and were owed no further overtime wages.

175. Utica's wage statement violations injured Lofton and the New York Class Members.

176. Utica's failure to provide accurate and compliant itemized wage statements caused the New York Class Members informational harm by preventing them from learning: (1) Utica had underpaid them; (2) the extent of the underpayment; (3) whether Utica made proper payroll tax deductions and other deductions on their behalf each pay period.

177. It also prevented Lofton and the New York Class Members from taking action to correct Utica's wage and hour violations at an earlier time, resulting in both the loss of the time value of earned wages and causing other workweeks to be barred by the statute of limitations.

178. Utica willfully violated NYLL § 195(3) by providing wage statements informing Lofton and the New York Class Members they were paid all wages owed when, in fact, they were owed additional overtime wages.

179. By failing to provide them with statutorily-required wage information about the wages Utica owed them, Utica hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication.

180. Due to these violations, Lofton and the New York Class Members are entitled to recover from Utica, $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Members, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

**<u>COUNT V</u>**
**FAILURE TO PROVIDE ACCURATE WAGE NOTICES**
**(NEW YORK CLASS)**

181. Lofton brings her NYLL wage notice claims as a class action on behalf of herself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

182. Utica failed to provide Lofton and New York Class Members with a written notice containing the following categories of information as required by NYLL § 195(1):

a. The rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

b. For non-exempt employees like Lofton and New York Class Members, the overtime rate of pay;

c. Allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

d. The regular pay day designated by the employer;

e. The name of the employer;

f. Any "doing business as" names used by the employer;

g. The physical address of the employer's main office or principal place of business, and a mailing address is different;

h. The telephone number of the employer; and

i. regular hourly rate and overtime rate of pay.

183. Instead, Utica provided Lofton and other New York Class Members with wage non-compliant wage notices that falsely informed Lofton and New York Class Members of inaccurate overtime rates of pay that disguised the fact that Utica underpaid overtime wages to them.

184. Utica's failure to provide compliant notices injured the New York Class Members.

185. Utica's failure to provide accurate and compliant wage notices as required under NYLL § 195(1) prevented Lofton and the New York Class Members from knowing the regular rates and overtime rates of pay they were owed.

186. Utica's failure to provide accurate and compliant wage notices prevented the New York Class Members from: (1) ensuring Utica made proper payroll tax deductions on their behalf each pay period; (2) ensuring Utica made other required deductions in the correct amounts each pay period; (3) taking action to correct Utica's wage and hour violations at an earlier time (resulting in multiple workweeks becoming time-barred).

187. Utica hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication by failing to provide them with the required wage information.

188. Utica harmed the New York Class Members by issuing false, deceptive, and/or misleading wage notices.

189. Had Utica provided accurate and legally compliant wage notices to Lofton, Lofton would have acted sooner, whether through self-advocacy and/or filing an action for unpaid wages.

190. Utica's wage notice violations cost the New York Class Members the time-value of their unpaid wages, which could have been recovered sooner.

191. Due to these violations, Lofton and the New York Class Members are entitled to recover from Utica, $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Members, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## JURY DEMAND

192. Lofton demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Lofton, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying class actions for the New York Class Members and the Manual Workers;

c. An Order appointing Lofton and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Utica liable to Lofton and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Utica liable to Lofton and the New York Class Members for all unpaid overtime wages and wage statement recovery owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages;

f. An Order finding Utica liable to Lofton and the other Manual Workers for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g. A Judgment against Utica awarding Lofton and the Straight Time Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and NYLL;

h. An Order awarding attorneys' fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: July 29, 2025

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Richard J. Burch*
Richard J. (Rex) Burch
NY Reg. No. 6154876
NDNY Bar Roll # 704544
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR LOFTON & THE HOURLY EMPLOYEES**